UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| TODD McCLASKEY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 2:03CV00066 AGF |
| ) | |
| LA PLATA R-II SCHOOL DISTRICT, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on two joint motions for summary judgment filed by (1) La Plata, Missouri, R-II School District and ten individuals connected to the District, including the former Superintendent, a former principal, and current and former members of the District's Board of Education ("School Defendants"); and (2) the City of La Plata and City Police Officer Jim Woolfolk. Plaintiff Todd McClaskey asserts that all individual Defendants were acting in their individual and official capacities. For the reasons set forth below, the School Defendants' motion shall be denied in large part; and the other Defendants' motion shall be granted.[2]

## BACKGROUND

The pending claims in this case arise out of Plaintiff Todd McClaskey's attempts to protest the August 2002 three-day suspension from high school imposed upon Plaintiff's biracial

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

[2] Defendant Lyndel Whittle was previously dismissed from this action and no allegations in the Third Amended Complaint relate to him. Accordingly, this Defendant is dismissed.

daughter following an altercation between her and a Caucasian student.[3] In his Third Amended Complaint, Plaintiff alleges that this altercation was, in fact, a racially-motivated assault upon his daughter by the other student, and that the other student subjected Plaintiff's daughter to other acts of racial harassment at school.[4] Plaintiff alleges that immediately after the altercation, his wife spoke with the school principal, who refused to change the disciplinary decision; in fact, an added punishment of docking Plaintiff's daughter from cheerleading at three future games was imposed by the principal. It is undisputed that neither Plaintiff nor his wife asked the Superintendent to place the matter on the agenda of the September 9, 2002, School Board meeting.[5]

Plaintiff and his wife appeared at the September 9, 2002, School Board meeting and presented a written appeal/statement to each member of the Board regarding the altercation, the

---

[3] The record indicates that Plaintiff's daughter was adopted and that in appearance she appeared to be African-American, and that the La Plata high school was otherwise all (or almost all) Caucasian.

[4] The record indicates that in June 2002, Plaintiff resigned from the school District as a highschool science teacher after two years of employment with the District. This fact is not relevant to the issues at hand.

[5] Plaintiff alleges in his Third Amended Complaint that after his wife spoke to the principal, he attempted to talk to the District Superintendent, Richard Forcum, but that Mr. Forcum refused to discuss the matter or review the principal's decision; and that "[t]hereafter" Plaintiff and his wife went to the September 9, 2002, School Board meeting. 3rd Amend. Compl. at ¶¶ 32-34. Mr. Forcum attests by affidavit that neither Plaintiff nor his wife attempted to speak to him about the matter prior to the September 9, 2002, School Board meeting. Plaintiff's wife testified by affidavit that after she spoke with the principal and until the September Board meeting, neither she nor Plaintiff had any contact with school personnel. And other documents submitted to the Court by Plaintiff, including the memorandum (Doc. #126) in opposition to the motions for summary judgment, suggest that neither Plaintiff nor his wife brought the matter to Mr. Forcum's attention prior to the September 9, 2002, Board meeting. The Court does not believe that this factual discrepancy ultimately impacts resolution of the motions now before the Court.

disciplinary decision, and the racial harassment their daughter had been experiencing at school. It is undisputed that Plaintiff was told that the appeal/statement could not be considered because he had not followed proper protocol. Plaintiff alleges that he also was told that he could not speak at the meeting. The minutes from the September 2, 2002, meeting state as follows: "Todd and Karen McClaskey wanted to speak to the board concerning their daughter, Sara. Because they had not gone through proper channels the board refused to hear them." Ex. 4 to Pl.'s Mem. (Doc. #126). According to the School District's answers to interrogatories, School Board policy allows individuals to address the Board for three minutes during the public comment portion of Board meetings regarding matters that are appropriate for open session. Sch. Defs.' Ex. D to Doc. #115 at 3. Plaintiff alleges that he had followed then-proper protocol for speaking at the public comment portion of the meeting. It is undisputed that thereafter, at that same meeting, the Board changed the procedures for addressing the Board with regard to student discipline. Id. at 2. No Party has provided the Court with a copy of either the initial or the amended version of this policy.

On October 21, 2002, Plaintiff filed a complaint with the Missouri Commission on Human Rights against the School District on behalf of his daughter, with regard to the disciplinary decision and other alleged acts of racial harassment she experienced at school. Plaintiff appeared at the November 11, 2002, School Board meeting, a transcript of which is included in the record. When public comments were invited, Plaintiff asked to speak. The President of the Board asked Plaintiff if he had followed protocol by going "all the way through the superintendent." Plaintiff asked what had happened with the written appeal that he had given to the members of the Board at the September meeting, and the President told him that the members had been directed to turn over the documents before reading them, and that the documents were then all shredded. Plaintiff

3

proceeded to present his version of the altercation between his daughter and the other student, the lack of a proper investigation despite the fact that it was a racially-motivated assault, and subsequent racial harassment to which his daughter was subjected by the same student at school. A verbal fray ensued between Plaintiff and the Superintendent concerning how the Superintendent had handled the matter with the other student. Plaintiff was then permitted to continue speaking, and he complained about how racial harassment was being handled at the school in general. Plaintiff and the Superintendent again got into an argument, this time related to Plaintiff's employment with the District. Plaintiff then returned to the subject of racial problems at the school, and after he made a brief statement, the President of the Board stated, "We need to move on," and Plaintiff responded, "We sure do."

Plaintiff next appeared at the December 9, 2002, School Board meeting. Officer Woolfolk was present in uniform and was wearing his sidearm. It is undisputed that Officer Woolfolk was asked to attend the meeting by the City Administrator for the City and by a School District employee (the School Safety Coordinator) upon consultation with Mr. Forcum, and that the President of the School Board had asked the City Administrator to have an officer present at the meeting. It is undisputed that the reason for these requests had to do with Plaintiff's anticipated attendance and conduct at the meeting. The record indicates that at the time, Officer Woolfolk, who was the officer with whom Plaintiff had filed an assault report against the student involved in the August 2002 altercation with Plaintiff's daughter, was the City's Acting Police Chief at the time, and that he made the decision to attend the December meeting, pursuant to the above-referenced requests. Officer Woolfolk has attested by affidavit dated January 15, 2003, that he was aware that before and after December 9, 2002, the City occasionally provided police

4

officers to attend School Board meetings at the request of the Board. Ex. B to City and Woolfolk's Mem. (Doc. #120).

According to the transcript of the December 9, 2002 meeting, when the President of the Board called for "public forum," Plaintiff took the floor and asked about the shredding of the appeal/statement he had submitted to the members of the Board at the September meeting. A brief exchange followed between the Plaintiff and the President, with the President stating several times that the matter was now before the Missouri Commission on Human Rights (MCHR). The President then stated, "If I have to ask [Officer Woolfolk] to remove you, I'll do that." Plaintiff asked if that was why Officer Woolfolk was there, and the President replied, "That's exactly why he's here." Plaintiff made an angry statement about the how the democratic process had been aborted and left the meeting, with Officer Woolfolk following him out of the building.

The record establishes that on March 2, 2003, Plaintiff filed a complaint with the MCHR challenging the School District's treatment of him, including shredding his written statement and having an armed police officer present at the December meeting. He claimed that these actions were in retaliation for his filing the MCHR discrimination complaint on behalf of his daughter. The MCHR initiated a full investigation of these matters.[6]

On July 16, 2003, the MCHR issued a right to sue notice with respect to the charge of discrimination that Plaintiff had filed on behalf of his daughter. The present action was commenced on October 13, 2003. The action was initially filed by Plaintiff's daughter, who was then still a minor; Plaintiff on his own behalf and as next friend for his daughter; and Plaintiff's wife on her own behalf. Eventually, Plaintiff's daughter and wife decided not to pursue the

---

[6] The School Defendants' argument that the investigative file is not properly before the Court because it was filed untimely is rejected.

lawsuit and were dropped as Plaintiffs. Plaintiff is thus proceeding only on his own behalf. In his Third Amended Complaint, he seeks actual and punitive damages against Defendants under 42 U.S.C. § 1983 for violation of his rights of free speech, to assemble, and to petition (Count I); under 42 U.S.C. § 1985 for conspiring to deprive Plaintiff of his above-mentioned constitutional rights as well as his equal protection rights (Count II); under 42 U.S.C. § 1986 for failing to intervene in the unconstitutional conspiracy (Count III); under the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. § 213.070, for retaliating against Plaintiff for his opposing Defendants' discriminatory treatment of his daughter and, specifically, for filing the complaint with the MCHR; said retaliation being the Superintendent's false statement to a prospective employer of Plaintiff that Plaintiff had been fired by the School District, resulting in Plaintiff's loss of a job with that employer (Count IV); and under 42 U.S.C. § 1981 for racial discrimination in that Plaintiff was opposing racial discrimination against his daughter (Count V).[7]

On June 24, 2004, the MCHR determined that there had been no violation of the MHRA with respect to the Board's treatment of Plaintiff in his attempts to protest the discipline imposed on his daughter and the handling of racial issues at the school.

**Arguments of the Parties**

The School Defendants argue that they are entitled to summary judgment because Plaintiff did not have a right to speak "at length" about his daughter's discipline at School Board meetings. The School Defendants acknowledge that School Board meetings are "limited open forums," but they argue that any discussion about Plaintiff's daughter would have impermissibly revealed confidential information about the other student, and thus, any such conversation would

---

[7] This Court has previously granted summary judgment in favor of several federal parties named as Defendants in the case.

have had to occur during closed session, under Mo. Rev. Stat. § 610.021(6). This section authorizes governmental bodies to close meetings that relate to "[s]cholastic probation, expulsion, or graduation of identifiable individuals."

The School Defendants argue that moreover, Plaintiff was not entitled to appeal his daughter's suspension before the Board because the suspension was only for three days, and the due process clause and Missouri statutory law only require a formal hearing if a suspension is at least ten days long.

The School Defendants next argue that even if Plaintiff did have a right to speak at the Board meetings, this right was not violated because he did speak at each Board meeting that he attended, during the public comment section of each meeting. They argue that although Officer Woolfolk was present at the December Board meeting, he did not confront Plaintiff in any way and thus, his presence did nothing to infringe upon Plaintiff's First Amendment rights.

The School Defendants argue that Plaintiff's conspiracy claim cannot survive summary judgment because the claim is based "on nothing but sheer speculation and conjecture," and because there was no constitutional violation to begin with. In support of their argument for summary judgment on Plaintiff's state law retaliation claim, the School Defendants have submitted Mr. Forcum's affidavit attesting that he never made the statement that Plaintiff was fired, and that he had never received any inquiries about Plaintiff from prospective employers.

The School Defendants argue that Plaintiff's claim under 42 U.S.C. § 1981 fails because they did not violate his constitutional rights or retaliate against him based upon his daughter's race "or any other motive." The School Defendants' final argument is that punitive damages are not recoverable against the School District, a public entity.

The City and Officer Woolfolk have filed a separate joint motion for summary judgment. They argue that they are entitled to summary judgment on Plaintiff § 1983 claim for violation of his First Amendment rights because the evidence shows that Plaintiff was allowed to speak at the December 2002 Board meeting and continued to speak even after he was allegedly threatened with removal by Officer Woolfolk. They argue that Officer Woolfolk's mere presence at the meeting did not have an inhibitory effect on Plaintiff's free speech right and did not rise to the level of a constitutional violation. They argue that Officer Woolfolk had a right to be at a meeting that was open to the public. These Defendants further argue that the City cannot be liable under § 1983 because Plaintiff has failed to identify any unconstitutional policy or custom of the City. They argue that Plaintiff's claims under §§ 1985 and 1986 fail as to them because there is no evidence to support a finding that they entered into an agreement with anyone to deprive Plaintiff of his constitutional rights.

With respect to Plaintiff's claim under the MHRA, the City and Officer Woolfolk maintain that Plaintiff has not alleged any violation of the Act on their part, and further that Plaintiff failed to exhaust administrative remedies as to them by not including them in the complaint to the MCHR. Lastly, the City and Officer Woolfolk argue that they are entitled to summary judgment on Plaintiff's claim under § 1981 because Plaintiff is not a member of a protected class or racial minority and because his claims do not involve employment or housing. They also assert that the "undisputed evidence establishes that when Officer Woolfolk attended the December 9, 2002 School Board meeting, he did not know that the meeting concerned racial problems or anything concerning race, or anything of that nature." City and Woolfolk's Mem. at 13 (Doc. #120).

Plaintiff argues that banning him from speaking at the September 2002 School Board meeting, shredding the written appeal/statement he presented to members of the Board at that meeting, arranging for the presence of a uniformed and armed police officer at the December meeting and threatening Plaintiff with removal by the officer violated Plaintiff's First Amended rights. Plaintiff argues that the evidence raises an inference of a mutual understanding and agreement among Defendants to violate his First Amendment rights in this fashion and/or were aware of these violations and did nothing to prevent them. Plaintiff argues that thus, Defendants have not established their right to summary judgment on his claims under §§ 1985 and 1986. Plaintiff states that he concedes that punitive damages are not available in this action.

With respect to Plaintiff's retaliation claim against the School Defendants, Plaintiff admits that he has no proof that any Defendant told a prospective employer of Plaintiff's that Plaintiff was fired by the School District. Plaintiff argues, however, that other challenged acts of Defendants -- namely their conduct surrounding the December 2002 School Board meeting -- were in retaliation for Plaintiff's filing the MCHR discrimination charge. In reply, the School Defendants argue that such an amendment to the pleadings should not be allowed at this point in the proceedings.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from

the record. Tademe v. Saint Cloud State Univ., 328 F.3d 982, 986 (8th Cir. 2003). The moving party bears the burden of showing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

A school board meeting, when opened to the public, is a limited public forum for discussion of subjects relating to the operation of the schools. City of Madison Joint Sch. Dist. No. 8 v. Wis. Employment Relations Comm'n, 429 U.S. 167, 175-76 (1976). When a school board sits publicly to conduct public business and to hear the views of citizens, it may not discriminate among speakers on the basis of the content of their speech, although it may confine its meeting to specified subject matter. Id. The government may place limitations on the time, place, and manner of access to such forums, but the restrictions must be content neutral and narrowly tailored to serve a significant governmental interest. Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45-46 (1983).

Here, the School Defendants have not pointed to any policy in effect as of the September School Board meeting excluding speech about student disciplinary decisions at the public comment portion of a meeting. Furthermore, the matters upon which Plaintiff wished to speak appear to have gone beyond the disciplinary decision to his concerns for his daughter's safety and racial treatment at school. The fact that there may be no right to appeal a three-day suspension to the Board does not mean that Plaintiff did not have a right to address the Board about his concerns about his daughter's treatment and for her safety. It is undisputed that Plaintiff was told at the December School Board meeting that Officer Woolfolk was present to remove Plaintiff if that became necessary. Furthermore, there is evidence that Officer Woolfolk was there at the request of the School District and the direction of the City for this very purpose. "Generally speaking, government action which chills constitutionally protected speech or

expression contravenes the First Amendment." Wolford v. Lasater, 78 F.3d 484, 488 (10th Cir. 1996) (citations omitted); Hansen v. Westerville City Sch. Dist. Bd. of Educ., No. 93-3231, 1994 WL 622153, at *10 (6th Cir. Nov. 7, 1994) (a threat to call the police made for the purpose of dissuading a person from expressing her views on the levy could have had a chilling effect on the exercise of her First Amendment rights).

Based upon the above, this Court cannot say that there are no material facts in dispute as to the School Defendants' right to judgment as a matter of law on Plaintiff's claims for violation of 42 U.S.C. §§ 1983, 1985, and 1986, based upon the alleged violation of his First Amendment rights. The Court concludes, however, that the City and Officer Woolfolk are entitled to summary judgment on these claims. Officer Woolfolk attests by affidavit that he was asked by the City Administrator to be present at the December School Board meeting to keep the peace. He also attests that he was asked by the School Safety Coordinator to attend the meeting. The School Safety Coordinator attests that she asked Officer Woolfolk to attend, because she had gotten complaints from parents regarding Plaintiff and wanted to ensure the safety of everyone present at the meeting. As noted above, Officer Woolfolk attested that this was not the only time a police officer was present in his official capacity at a School Board meeting at the request of the Board. Plaintiff has not refuted this evidence. The Court concludes that the evidence in the record does not present a jury question on whether the City or Officer Woolfolk acted inappropriately, or agreed with each other or the School Defendants, to chill Plaintiff from exercising his First Amendment rights.

The Court agrees with both sets of Defendants that Plaintiff's claim under § 1981 fails. This is so, not because he is Caucasian, but because the matter at issue does not involve contractual rights in any way and an element that must be proven under § 1981 is the failure to

perform a contractual obligation.  See, e.g., Wortham v. Amer. Fam. Ins. Co., 385 F.3d 1139, 1141 (8th Cir. 2004).   The Court also agrees with the City and Officer Woolfolk that they are entitled to summary judgment on Plaintiff's claim under the MHRA as they were not named as respondents in the relevant MCHR complaints.  See Stuart v. Gen. Motors Corp., 217 F.3d 621, 630-31 (8th Cir. 2000); Waldermeyer v. ITT Consumer Fin. Corp., 782 F. Supp. 86, 87-88 (E.D. Mo. 1991).

Lastly, the Court concludes that the School Defendants are not entitled to summary judgment on Count IV of Plaintiff's Third Amended Complaint for retaliation under the MHRA. The record supports a reading of the complaint as asserting that these Defendants' actions, subsequent to Plaintiff's filing the discrimination charge with the MCHR, were taken in retaliation for the filing of the charge.  The Court does not believe that the School Defendants will be unduly prejudiced by this reading of the Third Amended Complaint.

## **CONCLUSION**

The School Defendants have not established that they are entitled to summary judgment on Plaintiff's claims involving the violation of his First Amendment rights, and retaliation for exercising his rights under the MHRA.  The City and Officer Woolfolk are entitled to summary judgment on all claims in Plaintiff's Third Amended Complaint.  The Court emphasizes to all remaining Parties that this action no longer involves the question of whether the discipline imposed upon Plaintiff's daughter was discriminatory, nor whether any of the Defendants acted improperly in the investigation of the underlying altercation or the disciplinary decision.  The action is limited to whether Plaintiff's own rights were violated in his attempts to express his views at the September and December meetings of the Board of Education.

Accordingly,

**IT IS HEREBY ORDERED** that the School Defendants' motion for summary judgment is **GRANTED** as to Count V and **DENIED** in all other respects. [Doc. #114]

**IT IS FURTHER ORDERED** that the City and Officer Woolfolk's motion for summary judgement is **GRANTED** in its entirety.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of July, 2006