UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

TODD McCLASKEY,                    )
                                   )
        Plaintiff,                 )
                                   )
    vs.                            )    Case No. 2:03CV00066 AGF
                                   )
LA PLATA R-II SCHOOL DISTRICT,     )
et al.,                            )
                                   )
        Defendants.                )

## MEMORANDUM AND ORDER

This matter is before the Court[1] on the motion of Defendants La Plata R-II

School District (the "School District"), Michelle Travis, William Thompson, Carl Hagar,

Richard Burns, Becky Furman, Randy L. Baker, Michael Kimmel, Richard Forcum, and

Steve Davis (collectively, the "School Defendants") to enforce a settlement agreement

signed by Plaintiff Todd McClaskey, who appears in this case pro se.  An evidentiary

hearing was held on November 3, 2006, at which the School Defendants were represented

by counsel and Mr. McClaskey appeared pro se.  The Court heard argument and received

documents from the parties.  The School Defendants presented the testimony of Tom

Ward, the current Superintendent of the School District and of Mr. McClaskey.  Mr.

McClaskey also testified on his own behalf.  For the reasons set forth below, the Court

will grant Defendants' motion.

---

[1] The parties consented to the exercise of jurisdiction by the undersigned United
States Magistrate Judge under 28 U.S.C. § 636(c).

# BACKGROUND

This action was commenced on October 13, 2003, by Plaintiff, his wife, Karen McClaskey, and their then minor daughter, Sara McClaskey, who was a student at the La Plata, Missouri, high school. The complaint alleged that the daughter was discriminated against at school as a bi-racial individual and that Plaintiffs' attempts to seek redress were prevented by members of the School Board, the School District, and a La Plata police officer and city administrator. Plaintiffs further alleged that the Office of Civil Rights (OCR) of the United States Department of Education (DOE) refused their request for administrative review of the matter. Plaintiffs sought actual and punitive damages and injunctive relief against the School District, several employees of the School District, members of the School Board, the City of La Plata, a La Plata police officer and municipal official, the OCR, the DOE, the Secretary of the DOE, and several other DOE and OCR officials.

Plaintiff's wife and daughter eventually withdrew from the lawsuit and the Court determined that all Defendants except the School Defendants were entitled to judgment in their favor. The remaining School Defendants are the La Plata R-II School District; Richard Forcum, the former Superintendent of the District; Steve Davis, the former Principal of the District's high school; and seven (7) present and/or past members of the District's Board of Education, Michele Travis, William Thompson, Carl Hagar, Richard Burns, Becky Furman, Randy L. Baker, and Michael Kimmel.

**<u>Facts Preceding the Second Mediation</u>**

On Thursday, August 3, 2006, the Court held a final pretrial conference in the case, which was scheduled to proceed to trial on August 7, 2006, in the Northern Division. At the start of the pretrial conference, based on the parties' representations that such discussion might prove useful, the Court afforded the parties some time to conduct settlement discussions. Although no agreement was reached at that time, the parties represented that it had been a useful discussion, and the final pretrial conference was held.

The following day, on August 4, 2006, the Court was contacted and advised that the parties wished to continue their settlement discussions. Consistent with this advice, the School Defendants filed a written motion, with Plaintiff's consent, requesting that the trial be continued to permit the parties to conduct further settlement discussions. [Doc. #223]. The motion stated that following the pretrial conference the parties had conducted "a lengthy (two hour) conversation wherein they discussed settlement possibilities." It recited the parties' agreement that further settlement discussions would be fruitful and their belief that a continuance of the trial would be in the interest of justice. It further stated that because the School District was a public body, it could not meet to discuss settlement without providing seven-days' written notice to the public of its meeting. The motion stated that counsel for the School Defendants had reviewed the motion with Plaintiff, and that he was in agreement with the motion and had no objection to it.

Based on the parties' representation that they had a good faith belief that it would be productive to continue the case solely for the purposes of settlement, the Court

continued the trial to October 10, 2006. [Doc. #226]. Plaintiff and the School Defendants were directed to use the time originally scheduled for trial to meet in good faith and attempt to reach an agreement as to the general terms of a settlement by Friday, August 11, 2006, "with the understanding that any such agreement shall be subject to board approval." The parties were further directed to file a notice advising the Court of the status of their negotiations by August 18, 2006, and to attempt to consummate any proposed settlement by September 18, 2006.

On August 11, 2006, the Court held a hearing on Plaintiff's unrelated motion to reconsider the summary judgment entered in favor of two other Defendants, La Plata police officer Jim Woolfolk and the City of La Plata. Plaintiff and counsel for the School Defendants were present at the hearing, and confirmed to the Court, off the record, that they were continuing to have settlement discussions and had discussed perhaps conducting a second mediation. In furtherance of their settlement discussions, counsel for the School Defendants gave Plaintiff a draft of a proposed settlement agreement for his review.

Over the course of the next few weeks, the parties continued their settlement discussions. The parties represented that they thought it might be productive to send the case to mediation a second time, but Plaintiff indicated that he did not want to pay for another mediator. The parties thereafter agreed to have Professor Karen Tokarz, who agreed to waiver Plaintiff's share of her fee, serve as the mediator.

On September 6, 2006, the Court held a conference call with Plaintiff and counsel for the School Defendants. The parties confirmed that they had had numerous

conversations since the August 11 hearing, but had not yet been able to schedule a mediation with Professor Tokarz. Though Plaintiff expressed dissatisfaction with the Court's prior orders dismissing Defendants other than the School Defendants, Plaintiff confirmed to the Court his willingness to pursue a mediation with the School Defendants. The Court specifically reminded Plaintiff that the mediation would be with the School Defendants only, and would not involve any claims he believed he had regarding the police, the City of La Plata, or any Defendants other than the School Defendants. The Court further directed Plaintiff that he should not go forward with the mediation if he did not believe he could, in good faith, attempt to negotiate a separate settlement with the School Defendants only. Plaintiff stated that he understood and confirmed his willingness to mediate, in good faith, his claims against the School Defendants.

On September 7, 2006, Margaret Hesse, counsel for the School Defendants, and Plaintiff exchanged emails confirming that the mediation was scheduled with Professor Tokarz for Thursday, September 14, 2006, and noting that Professor Tokarz was requesting the parties' mediation statements by Monday. In an email requesting that the time be changed to 10:00 a.m., to permit her clients to travel to St. Louis that morning, Ms. Hesse advised Plaintiff, "Tom Ward, the current superintendent, Becky Furman, Bill Thompson and Richard Burns plan to attend the mediation for the school defendants. Also will you let me know if Karen and Sara plan to attend so that I can have enough chairs, refreshments, etc. available?" Def. Ex. 5.

## The Mediation Conference and Settlement Agreement

The mediation conference was held on September 14, 2006, beginning at 10:00 a.m., at the offices of counsel for the School Defendants. In attendance were Tom Ward, Becky Furman, Bill Thompson, and Richard Burns, on behalf of the School Defendants; their attorneys Ms. Hesse and Ms. Cole; Plaintiff Todd McClaskey; and Professor Karen Tokarz and one of her students, who was observing. Plaintiff did not have his daughter or his wife attend.

At the start of the conference, Professor Tokarz presented the parties with a Mediation Confidentiality Agreement, which Plaintiff reviewed and signed, as did the School Defendants' representatives. Def. Ex. 1. In the agreement, the parties and their counsel agreed to negotiate in good faith. Professor Tokarz at some point set a 5:00 p.m. deadline for the parties to reach an agreement. This was done, at least in part, because Ms. Hesse advised the parties that she would have to leave at 5:00 p.m. to attend a board meeting. Apparently, Mr. Ward also felt, because it would be a long day, that any agreement should be reached by 5:00 p.m.

The parties negotiated in good faith for seven hours, from 10:00 a.m. to 5:00 p.m., including over the lunch hour, having lunch brought in. By 5:00 p.m., Plaintiff and the School Defendants reached an agreement, which was reduced to writing (the "Settlement Agreement"). Def. Ex. 2. The final agreement reached was similar to the proposed agreement that Ms. Hesse had given to Plaintiff on August 11, 2006, and the Settlement Agreement accurately reflects the terms of the agreement the parties reached.

The Settlement Agreement provides, in part, that the School Defendants would issue letters to Mr. McClaskey setting forth their reflections on the incidents that gave rise to the lawsuit, and discussing the changes the District had made or will make as a result of the McClaskeys' attempts to bring to light certain issues with the District. In addition, the District agreed to do the following: (a) conduct conflict resolution workshops with 4th grade students during the school year, particularly related to harassment and bullying, which workshops Sara McClaskey could attend and participate in, and conduct annual workshops with upper-grade students and in-service and training of all staff; (b) make a statement at the beginning of each open meeting of the Board stating the purpose of the comment portion of the meeting, and advising of the procedures to be placed on the agenda, which statement would also be printed on Board agendas; (c) maintain its Board policies on a website for public inspection at no charge; (d) make $1,000 available to the McClaskey family for counseling and/or other professional services; (e) pay to the McClaskey family $30,000 to be used for educational and travel purposes, with payments to be made in two installments of $15,000 each, on November 1, 2006, and January 10, 2007; (f) provide Mr. McClaskey with a letter of recommendation and respond to inquiries from prospective employers in a particular manner, described more fully in the agreement. Plaintiff, for his part, agreed not to make any further claims against the School Defendants, and upon execution of the Settlement Agreement to file with the Court a Voluntary Dismissal with prejudice of the School Defendants. The Settlement Agreement further provides, "Mr. McClaskey acknowledges

that they have voluntarily entered into this Agreement of their own free will based only upon the terms and conditions included in the Agreement."

At or near 5:00 p.m., the Settlement Agreement was signed by all of the parties present: Tom Ward, Becky Furman, Bill Thompson, and Plaintiff. The Settlement Agreement also contained signature lines for the School Board and the School Defendants who were not present at the mediation, listing each by name and providing lines for their signatures and the dates of their signatures. Ms. Hesse advised Plaintiff that she would have the others sign the Settlement Agreement and send it to him. At the hearing, both Mr. Ward and Plaintiff acknowledged that it had been a long day and that everyone was tired by the end of the day.

The mediator, Prof. Tokarz, thereafter filed an ADR Compliance Report, acknowledging that the ADR conference had been held on September 14, 2006; "All required individuals, parties, counsel of record, corporate representatives, and/or claims professionals attended and participated in the ADR conference in good faith, and each possessed the requisite settlement authority"; and that the parties did achieve a settlement. [Doc. #257].

Following the mediation conference, Ms. Hesse contacted Defendants Forcum and Davis to obtain their signatures, and Tom Ward contacted the remaining individual School Defendants and advised them of the agreement that had been reached. The School Defendants then began to take the steps necessary to implement the Settlement Agreement. Pursuant to the terms of the agreement, the current school board and the prior school board each drafted the letters required, the District drafted the letter of

8

recommendation, and the District began to process the paperwork necessary for the first installment of the $30,000 payment. They also scheduled a School Board meeting to approve the Settlement Agreement in closed session.

On September 16, 2006, Plaintiff sent a letter to Tom Ward, Superintendent, referencing "Settlement Agreement September 14." Def. Ex. 3 (filed as Doc. #252-1). In the first paragraph, Plaintiff stated, "To matters of the meeting Thursday and the document #5, please send, in my name, the $1,000 designated for "counseling" to the youth program at the Kirksville United Methodist Church." With regard to the payments referenced in ¶6, Plaintiff stated, "please do not send us any money in November and January. We will get by just fine." He also stated that he did not need the letter of recommendation referenced in ¶7. He further stated, "The rest of the agreement numbers reflects what the Court and the Defense team set out to get from the meeting." In the last substantive paragraph of the letter Plaintiff stated:

> As for the signatures on the document, as of 5:00 PM on September 14, according to the deadline set by Dr Tokarz, I think those signatures reflect accurately those who were participants in the meeting as of that signing date and time. Any additional signatures will make that representation illegitimate and make it appear that Richard Forcum and Steve Davis (and the rest of the blankety-blanks) were conscientious participants, and they were not. And additional signatures will make it appear there was closer to a quorum of Defendants, and there were not.

He closed by stating, "If there is anything else I can do for the school please let me know." Id.

Mr. Ward received Plaintiff's September 16 letter, which he read as a reaffirmation of the settlement reached, on Monday, September 18, 2006. On September

20, 2006, at 12:00 p.m., the current members of the District's Board of Education met in closed session. Mr. Ward distributed a copy of Plaintiff's September 16 letter to the members. They, too, read the letter as affirming the fact of the settlement, and the Board formally approved the Settlement Agreement. There was no discussion of the paragraph of the letter pertaining to signatures. Defendants Becky Bunch and Michael Kimmel signed the Settlement Agreement at the meeting, and Becky Furman signed again in her capacity as President of the Board of Education. Randy Baker signed on September 19, 2006, and the remaining individual School Defendants signed between September 21 - 26, 2006. The date on which each School Defendant executed the Settlement Agreement is reflected on the document. Def. Ex. 2.

On October 2, 2006, Ms. Hesse sent a letter to Plaintiff by overnight carrier, enclosing a copy of the fully executed Settlement Agreement and advising him that it had been approved by the Board. She also enclosed a voluntary dismissal memorandum, which she stated Plaintiff would need to file with the court, together with the letters from the former and current Boards of Education and the letter of recommendation, referenced in the Settlement Agreement. Def. Ex. 6.

In the meantime, having heard nothing from the parties, the Court issued an Order on September 28, 2006, directing that the parties advise the Court on the status of the mediation by Friday, October 6, 2006. On October 5, 2006, the School Defendants filed a memorandum advising that a settlement had been reached, the Settlement Agreement had been fully executed, and that Plaintiff had a copy of the voluntary

dismissal that the School Defendants understood Plaintiff would be filing in the near future.  [Doc. #250].

On December 6, 2006, the Court received a memorandum from Plaintiff, purporting to declare null and void his signature on the Settlement Agreement.  [Doc. #252].  The caption on the pleading reads:

> Plaintiff (Pro Se) hereby declares Null and Void the signature of
> Plaintiff on the September 14, 2006 Settlement Agreement Release
> document, as a result of violation of the Rules of Engagement as set
> forth by Dr. Tokarz for signing and legitimizing that document.  The
> addition of signatures does not represent what went in to both the
> making of that document or who was represented at that meeting when
> rules of engagement determined the end of the signing processes.

As exhibits to his filing, Plaintiff attached a copy of his September 16, 2006 letter to Mr. Ward, and a copy of the Settlement Agreement, with two handwritten notations.  The handwritten notations assert that the portion that contains the original four signatures on September 14, 2006, is "the legitimate original . . . and meets the Rules of engagement of Dr. Tokarz," and the portion that contains the signatures thereafter "does not represent the September 14 set of signatures and original Agreement according to Dr. Tokarz rules of engagement."  In his memorandum, Plaintiff also discusses the fact that his claims against the other parties have been denied and states that his "failure to be able to address these entities have effected the September 14 Mediations and to matters of Trial."  [Doc. #252].

On October 6, 2006, the School Defendants filed a second memorandum to the Court, stating that after filing the October 5, 2006 memorandum, Plaintiff had advised Ms. Hesse that he planned to file a pleading declaring his signature on the Settlement

Agreement "null and void," and that the School Defendants planned to file a motion to enforce the Settlement Agreement. [Doc. #251].

The School Defendants filed a motion to enforce the Settlement Agreement on October 16, 2006, together with a memorandum and supporting affidavits and documents. [Doc. Nos. 255 & 256]. On October 18, 2006, Plaintiff filed a letter/pleading "Re: Plaintiff (Pro Se) objections to premise of the La Plata School Defense October 2, 2006 letter to the Court ("to whom it may concern").[2] In the October 18 pleading, Plaintiff essentially objects to the fact that the City of La Plata and police department Defendants were dismissed from the lawsuit; asserts that the Court's Order of August 14, 2006, denying the motion for reconsideration, is wrong; and complains of other pretrial proceedings unrelated to the mediation.

### The Hearing on the Motion to Enforce the Settlement

Plaintiff does not deny that he reached an agreement with the School Defendant representatives who were present as to the terms of the settlement, nor does he deny that the substantive provisions of the Settlement Agreement properly expresses those terms. His main objection seems to be that School Defendants who were not present at the mediation conference should not have been permitted to sign the Settlement Agreement after September 14, 2006, at 5:00 p.m. Plaintiff believes that the version of the Settlement Agreement later signed by the Defendants who were not present gives the false impression that they were at the mediation session and met "the rules of

---

[2] In its Order setting the hearing, the Court noted that it does not know what October 2, 2006 letter the Plaintiff is referencing.

engagement," including the 5:00 p.m. deadline for reaching an agreement. He contends that the subsequent addition of their signatures "invalidated" the agreement. He further asserts that he went into the mediation session "discouraged" by the Court's Order dated August 14, 2006, denying his motion for reconsideration of the grant of summary judgment to the City Defendants.

At the hearing, Mr. Ward, the Superintendent of the District since July 2004, testified that he was present at the September 14, 2006 mediation, along with the other three representatives. He testified that it was made clear to everyone present, including Plaintiff, that the School Defendants present at the session represented all the remaining School Defendants. He had been in constant communication with all of the School Defendants, other than Defendants Davis and Forcum, who lived out of town, and was authorized to reach an agreement on behalf of all the School Defendants who were not present, including Davis and Forcum. He did not consider, however, that he was authorized to actually affix their signatures to any settlement agreement. Mr. Ward testified that counsel for the School Defendants also made it clear to Plaintiff that the negotiations were on behalf of all of the School Defendants, and Plaintiff acknowledged that he understood that Ms. Hesse and the representatives present were there on behalf of all of the School Defendants. Ms. Hesse also reiterated that they were not authorized to settle on behalf of the City of La Plata, or the police officer or any other persons who had been parties to the suit other than the School Defendants, a fact that Plaintiff also said he understood.

With regard to the mediation conference itself, Mr. Ward testified that it was a long day, and that he agreed with the notion that a 5:00 p.m. deadline be set for reaching any agreement. He testified that the parties negotiated in good faith all day and reached an agreement, which agreement was reflected in the written Settlement Agreement. After the mediation session ended, the named School Defendants who were not present were contacted and their signatures were obtained on the Settlement Agreement. He further testified that the School District is ready and able to comply with the terms of the Settlement Agreement.

Mr. Ward acknowledged that he had received the letter from Plaintiff dated September 16, 2006, which stated, among other things, that the signatures of those who were not present at the mediation session would make it appear that they were "conscientious participants," when they were not. Based upon his reading of the letter, he believed that Plaintiff was acknowledging that they had a settlement agreement, and that its terms were still required to be fulfilled. With regard to the $30,000 payment, Mr. Ward testified that during the course of the settlement discussions, Plaintiff had repeatedly stated that he was an educator and never wanted money from the School District, and he read Plaintiff's statements in the letter regarding the payments to be consistent with his earlier-stated desire. Mr. Ward testified that there was no discussion at the September 20, 2006 meeting of the paragraph of Plaintiff's September 16 letter pertaining to the signing by other School Defendants.

At the hearing, Plaintiff acknowledged that he had, in fact, reached an agreement to settle this case with the School Defendants on September 14, and that he signed the

written Settlement Agreement. He testified that he believed he had participated in the mediation in good faith, and that those who participated on behalf on the School Defendants participated in good faith, as well.

With regard to the School Defendants who did not attend the session, Plaintiff testified that one week prior to the mediation conference, he had received the email that advised him of the four School Defendants who would participate at the mediation conference. He also acknowledged that he understood at the mediation session that Ms. Hesse represented all the of the School Defendants, including those who were not present, and that the School Defendants who were present at the meeting had the authority to settle the case on behalf of all the remaining School Defendants. He further admitted that no one had ever represented to him that any settlement might exclude any of the School Defendants. With regard to the September 16 letter, Plaintiff did not state that he intended thereby to rescind his agreement. Rather, he stated that the first three paragraphs meant that he did not expect any money, and that the paragraph pertaining to the signatures "was an idealism."

During the course of his examination of Mr. Ward, and during his own testimony, Plaintiff admitted that an agreement had been reached between himself and the School Defendants on September 14, and he testified that he felt they had a valid and legitimate contract as of 5:00 p.m. on that day. He acknowledged that the written Settlement Agreement reflected the terms of the agreement reached, though he objected to the additional signatures by the remaining School Defendants, and that the Settlement Agreement was very similar to the draft that was given to him on August 11, 2006.

Plaintiff further acknowledged that the agreement reached included a voluntary agreement to conclude the court case. He testified that the agreement reflected his will and the will of the others, and he stated that he believed the District was trying honestly to meet the obligations of the mediation agreement.

Plaintiff also testified that he signed the agreement in a mood of discouragement and exhaustion, while acknowledging that the process was emotionally draining for everyone. He stated that he believed something illegal happened related to the Settlement Agreement when it was signed by the other School Defendants, and affirmatively stated in response to the Court's question, that he no longer wished to settle the case under the terms set forth in the Settlement Agreement.

## DISCUSSION

This Court has the inherent power to enforce a settlement agreement entered into by the parties in a pending case. Settlement agreements are favored by the courts. Caleshu v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 737 F. Supp. 1070, 1086 (E.D. Mo. 1990), aff'd, 985 F.2d 564 (8th Cir. 1991). Settlement agreements are governed by "basic contract principles." Sheng v. Starkey Labs., Inc., 117 F.3d 1081, 1083 (8th Cir. 1997) (declining to determine whether state or federal common law controlled a Title VII settlement agreement, as both sources of law resulted in same outcome); Kenner v. City of Richmond Heights, Mo., 356 F. Supp. 2d 1002, 1007-08 (E.D. Mo. 2005), aff'd, 2006 WL 2620645 (8th Cir. Sept. 14, 2006). In order for a settlement agreement to be enforceable, the parties must have reached agreement on the essential terms of the deal. Sheng, 117 F.3d at 1083. Even if the parties have left some details for counsel to work

out through further negotiation, a legal, valid settlement agreement still exists.  Id. at

1083.  The party requesting enforcement of a settlement agreement has the burden of

proving its claim for relief by clear, convincing, and satisfactory evidence.  Kenner, 356

F. Supp. 2d at 1008.

> Once parties have settled a dispute and have agreed to settlement terms,
> the parties cannot rescind it.  In order to determine whether the parties
> intended to be bound by the settlement prior to the execution of the
> written documents, a court must consider the course of negotiations,
> agreement on material terms, whether the parties described the
> settlement as such, and whether any existing disagreements were merely
> technicalities.

Caleshu, 737 F. Supp. at 1086.

The terms of the settlement agreement at issue in the present case are complete

and unambiguous.  In fact, Plaintiff takes no issue with the substantive terms of the

agreement.  Rather, his complaint is that individuals who were not at the mediation

session, and not under the time pressure to sign the document by 5:00 p.m. that day,

should not have later signed the written Settlement Agreement.

The Court concludes that Plaintiff and the School Defendants reached an

enforceable agreement on September 14, 2006, and that the terms of the agreement are as

set forth in the written Settlement Agreement.  All parties to the mediation – including

Plaintiff – were aware both prior to and at the time of the mediation conference that four

of the Defendants would be representing the School Defendants.  At no time prior to

reaching an agreement did Plaintiff voice any objection to proceeding in that fashion.

The representatives present were fully authorized to reach an agreement with respect to

all of the School Defendants, and Plaintiff clearly understood that the terms of the agreement reached pertained to all of the School Defendants.

The Court further concludes that the addition to the written Settlement Agreement of the signatures of Defendants not present at the mediation session does not invalidate the agreement reached between Plaintiff and the School Defendants. The Court concludes from all of the evidence and testimony that the rules the parties set for the mediation conference did not require that all parties physically sign the Settlement Agreement by 5:00 p.m., but rather that the parties reach an agreement by 5:00 p.m., which agreement would be memorialized by the written Settlement Agreement signed by all parties who were present. This requirement was in no way violated. Further, from a legal perspective, it would be both natural and expected that all parties to the agreement would sign the final Settlement Agreement and release.

Plaintiff's concern that the signatures of the not-present School Defendants implies some participation on their part – a concern for which the Court sees little basis – neither affects the validity of the Settlement Agreement nor justifies Plaintiff repudiating the terms to which he unequivocally agreed. Clearly Plaintiff cannot claim surprise. He knew well in advance of the mediation conference that four individuals and their counsel would represent the School Defendants. He also knew that any settlement would have to be reviewed and approved by the School Board following the mediation conference. The document he signed had signature lines and dates for all of the School Defendants, including those not present, and Ms. Hesse specifically advised Plaintiff that she would be obtaining the signatures of others and sending the fully executed agreement to him.

Nevertheless, Plaintiff expressed no objection to the anticipated signatures of others until two days after the mediation was concluded, and did so in a letter that affirmed, rather than repudiated, that an agreement had been reached. Plaintiff cannot now disavow the agreement he reached simply because he does not like the fact that the fully-executed document may somehow imply "conscientious participation" by the non-present School Defendants, or because of any continuing ill feeling he may have toward some of the individual School Defendants.

Further, that Plaintiff was "discouraged" by the Court's August 14, 2006, Order, declining to reconsider the Order granting summary judgment to the City and Officer Woolfolk, also fails to provide any basis for disregarding the terms of the Settlement Agreement. In this regard, the Court notes that its Order denying reconsideration was issued a full thirty days prior to the mediation conference. Thereafter, on September 6 – weeks after the Order was issued – Plaintiff expressly confirmed to the Court that he was willing to negotiate in good faith with the School Defendants, even though no other parties originally named by Plaintiff would be a party to discussions. He confirmed his commitment to negotiate in good faith in the Mediation Confidentiality Agreement that he signed at the start of the mediation conference. Def. Ex. 1. Plaintiff's discontent with the Court's disposition as to other parties to the litigation does not serve as a basis for disregarding the agreement that he reached with the School Defendants.

Nor does Plaintiff's pro se status relieve him from complying with the terms of an agreement which he knowingly and voluntarily reached. Plaintiff is a 61 year old adult with a Masters in Education, who was a high school science teacher. At the time he

signed the Settlement Agreement, he was not under the influence of any drugs, alcohol or other substances that might have impaired his thinking. The Court also notes that the mediation was conducted by an extremely experienced mediator, and that this was Plaintiff's second mediation conference, the first having taken place while Plaintiff was represented by counsel. Nor is the Court persuaded by any claim of undue pressure. While the actual mediation conference took place in one day, with a requirement that any agreement be reached and executed by those present by 5:00 p.m., the discussions leading up to the mediation conference took place over more than one month. Plaintiff also had received a proposed draft, very similar to the final terms reached, on August 11, 2006, and therefore had more than one month to consider the terms. Plaintiff knowingly and voluntarily agreed to the terms of the Settlement Agreement, and he is bound by the agreement reached.

In their motion to enforce the Settlement Agreement, the School Defendants have requested attorneys' fees and costs associated with the filing of their motion. The Court believes the request is well-founded. Neither Plaintiff's unhappiness that others were permitted to sign after 5:00 p.m. nor his concern that such signatures will imply "participation" justifies Plaintiff's repudiation of the agreement he knowingly and voluntarily reached. And his current unfounded actions have unquestionably caused Defendants to incur significant additional expenses. Because of Plaintiff's pro se status, his lack of knowledge of the law, and his prior representation to the Court that he did not feel he could incur the costs associated with the appointment of a second mediator, the

Court will limit the award to a nominal amount, which amount may be deducted from the first installment of the $30,000 payment to be made under the Settlement Agreement.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to enforce their Settlement Agreement with Plaintiff Todd McClaskey is **GRANTED**.  [Doc. #255].

**IT IS FURTHER ORDERED** that the School Defendants shall comply with the terms of the Settlement Agreement dated September 14, 2006. [Def. Ex. 2].  Pursuant to the terms of the Settlement Agreement, the claims of Plaintiff against Defendants La Plata R-II School District (the "School District"), Michelle Travis, William Thompson, Carl Hagar, Richard Burns, Becky Furman, Randy L. Baker, Michael Kimmel, Richard Forcum, and Steve Davis are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the School Defendants' request for fees and costs incurred in connection with their motion to enforce the settlement agreement is **GRANTED** in the amount of $250, which amount may be deducted from the first installment of the $30,000 amount due Plaintiff under the Settlement Agreement.

As all claims against all parties have now been resolved, a separate Judgment shall accompany this Memorandum and Order.


AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE


Dated this 7th day of November, 2006.